IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CRYSTAL FINISHING SYSTEMS, INC.,

Plaintiff,

v.

GERBER LIFE INSURANCE COMPANY,

Defendant.

OPINION and ORDER

23-cv-784-jdp

---

This is an insurance coverage dispute. Plaintiff Crystal Finishing Systems, Inc. operates a self-insured health plan for its employees. But to cover large claims, Crystal Finishing purchased an excess loss policy from defendant Gerber Life Insurance Company. Toward the end of the policy period, Gerber Life denied two large claims on the ground that the claims had not been "paid," as that term is defined in the policy, within the policy period. Crystal Finishing contends that the claims were timely paid, and it filed this suit alleging that Gerber Life breached the insurance contract and denied the claims in bad faith. Gerber Life counterclaims for indemnification under the policy.

Both parties move for summary judgment on Crystal Finishing's breach of contract claim. Dkt. 30; Dkt. 39. Gerber Life also seeks for summary judgment on Crystal Finishing's bad faith claim and its indemnification counterclaim. Dkt. 39. The parties also jointly move to postpone the trial date and pretrial deadline by 45 days. Dkt. 60.

The case turns on the definition of the term "paid." The policy definition is complex, but the relevant part is essentially that a claim is "paid" if the check is mailed and the account that the check is drawn on has funds to honor it. In this case, the checks were mailed but the funds to honor the total amount of the checks were not available until April 1, 2022, after the

end of the policy period on March 31. The accounts that mattered had funds to cover some of the checks, but the necessary transfer to cover the entire amount was not completed by the end of the policy period. The court concludes that neither party has correctly interpreted the policy definition of "paid." Under the correct interpretation, some of the claims were improperly denied.

The court will grant summary judgment to Gerber Life on the bad faith claim because although its interpretation of the policy was wrong, it was not unreasonable. The court will dismiss Gerber Life's counterclaim for indemnification because it faces no liability other than that arising from Crystal Finishing's breach of contract claim. The court will deny both parties' motions for summary judgment on the breach of contract claim, strike the current schedule, and set a deadline for the parties to address how to resolve this case based on the court's interpretation of the policy.

## UNDISPUTED FACTS

The following facts are undisputed.

Plaintiff Crystal Finishing Systems, Inc. provides health benefits to its employees under a self-funded group health insurance plan. To limit losses under the plan, Crystal Finishing purchased stop-loss coverage from defendant Gerber Life Insurance Company. Under the Excess Loss Insurance Policy, Gerber Life would reimburse Crystal Finishing for health benefits that Crystal Finishing paid to its employees past a $100,000 deductible per employee. Dkt. 1-1, at 3. The policy covered health benefit expenses incurred and paid from April 1, 2021, to March 31, 2022. *Id.*, at 2.

Crystal Finishing used third-party administrator, UMR, Inc., to adjudicate and pay eligible claims. Dkt. 34, ¶ 4. UMR paid claims by checks drawn on a custodial account. To fund the custodial account, UMR had authority to initiate ACH transfers from Crystal Finishing's main operating account. The operating account was backed by a line of credit, which automatically swept funds into the operating account as needed to prevent the operating account from being overdrawn. The operating account did not automatically sweep funds into the custodial account; the custodial account was funded by UMR-initiated ACH transfers. UMR also had the authority to request a same-day wire transfer from the operating account if a claim payment would result in an overdraft on the custodial account. *Id.*, ¶¶ 6–7.

At the end of March 2022, UMR adjudicated, deemed eligible for coverage, and initiated payments totaling approximately $605,000 to two beneficiaries of Crystal Finishing's health plan. Between March 29 and March 31, UMR mailed checks to the beneficiaries.[1] On March 31, UMR initiated an ACH transfer from the operating account to the custodial account in the amount of $724,880.70 to fund the payments. The operating account balance was not sufficient to cover the ACH transfer, so funds were drawn from the line of credit. The ACH transfer to the custodial account was completed on April 1, and the checks were deposited by the beneficiaries in the first few days of April.

After making the payments, UMR sought reimbursement from Gerber Life under the excess loss policy on Crystal Finishing's behalf. Gerber Life ultimately denied the claim,

---

[1] Gerber Life contends that Crystal Finishing failed to adduce evidence establishing the dates on which the checks were mailed. Dkt. 50, at 5. But Crystal Finishing submitted a declaration from an employee at UMR asserting that the checks were mailed between March 29 and March 31. Dkt. 34, ¶ 12. This declaration is admissible evidence that Gerber Life has not rebutted. So the undisputed evidence shows that the checks were mailed before the end of the policy period.

explaining that the payments were not paid within the policy period because the funds to make the payments did not settle in the custodial account until April 1.[2]

Cystal Finishing is a Wisconsin corporation with its principal place of business in Weston, Wisconsin. Gerber Life Insurance Company is a New York company with its principal place of business in New York. Crystal Finishing asks the court to award more than $577,909 in damages. Because the parties have diverse citizenship and the amount in controversy is greater than $75,000, the court may exercise jurisdiction under 28 U.S.C. § 1332.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The familiar standards apply: summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating summary judgment motions, the court views the facts and draws all reasonable inferences in the favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Here, the material facts are undisputed and the dispute turns on the interpretation of the policy, which is a matter of law for the court. *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019); *Olson v. Farrar*, 2012 WI 3, ¶ 36, 338 Wis. 2d 215, 231, 809 N.W.2d 1, 9.

---

[2] Gerber Life contends that Crystal Finishing failed to adduce evidence that the claims were properly adjudicated and covered under Crystal Finishing's health plan, which they would have needed to be to be eligible for reimbursement. Dkt. 40, at 13–15; Dkt. 56, at 5–7. But Crystal Finishing provided admissible evidence that the claims were adjudicated, deemed eligible under the health plan, and paid to beneficiaries. Dkt. 49. The court concludes that the undisputed evidence shows that the only issue for reimbursement eligibility is whether the claims meet the policy's definition of "paid."

## A. Breach of contract claim

The critical dispute is whether the two denied claims were "paid" during the term of Crystal Finishing's excess loss policy with Gerber Life. The parties agree that Wisconsin law applies. Under Wisconsin law, insurance policies are contracts, to which the general principles of contract law apply. The court must interpret policy language "to give effect to the intent of the parties," using the language's "plain and ordinary meaning, as understood by a reasonable person in the position of the insured." *Phillips v. Parmelee*, 2013 WI 105, ¶ 12, 351 Wis. 2d 758, 840 N.W.2d 713. Any ambiguity in the policy language is construed in favor of the insured. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154.

To be eligible for reimbursement under the excess loss policy, Crystal Finishing's employee benefit expense must have been incurred and paid within the benefit period, which ended on March 31, 2022. Dkt. 1-1, at 8 (defining "Benefit Period"). There's no dispute that the expenses were incurred during the policy period.

The policy defines the term "Paid" as follows:

> **Paid** means that funds are actually disbursed by the Contractholder or his Agent. Payment of a claim is the unconditional and direct payment of a claim to a Covered Person or his health care provider. Payment will be deemed Paid on the date that both (1) the payor directly tenders payment by mailing (or otherwise delivering) a draft or check to a Covered Person or his health care provider, and (2) the account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored. If the account upon which the payment is drawn is funded by a separate account or line of credit or "sweep" account, then the funding account must contain sufficient funds to permit the check or draft to be honored by the institution upon which it is drawn. Authorization for release of funds by the Contractholder or its Agent does not meet the definition of Paid under this Contract.

Dkt. 1-1, at 11. The definition is complex, but the part that matters here is that a claim is deemed paid if the check is mailed and the account on which the check is drawn has funds to honor it. There's a further provision if that account is funded by another account, a line of credit, or a sweep account. In that case, that other account—the "funding account"—would have to have funds sufficient to cover any shortfall in the first account.

Here, the "account upon which the payment is drawn" is the custodial account, which had a balance of only $70,568.40 on March 31, 2022. Dkt. 44-7, at 2. The parties agree about that.

The parties apparently dispute whether there was a "funding account." Crystal Finishing says the funding account was the operating account, from which UMR was authorized to draw to cover claim payments. That account had a balance of $332,140.57 on March 31, 2022. Dkt. 44-3, at 27. That wouldn't have been enough to cover all the outstanding claim payments on March 31, even combined with the balance in the custodial account. But it would have covered a substantial number of those claim payments.

Gerber Life argues that on March 31 the operating account didn't have enough funds to cover the outstanding checks without pulling from the line of credit, and that neither the operating account nor the line of credit were set up to automatically fund the custodial account. Dkt. 40, 9–10. Part of Gerber's argument seems to be that the operating account is not a "funding account" at all, because it didn't automatically sweep funds to the custodial account to cover outstanding checks. But that argument isn't supported by the policy definition of "paid."

The definition provides that a "funding account" might be one of three things: "a separate account or line of credit or 'sweep' account." The definition doesn't require the

"funding account" to be "sweep account"; that's just one of the options. The definition requires that "the funding account must contain sufficient funds to permit the check or draft to be honored by the institution upon which it is drawn." But nothing in the definition requires that the funds in the funding account must be *automatically* sent to the custodial account. By its terms, the definition requires only that the funding account, in combination with the custodial account, have funds to cover the outstanding claim checks. The definition doesn't require a specific manner of moving money from the funding account to the custodial account. Gerber Life's interpretation would render much of the policy definition superfluous. If the policy required that the funding account automatically fund the custodial account, then the funds would necessarily be provided to the custodial account when the checks were presented. If that were the case, then there would be no need for the definition of "paid" to address funding accounts, lines of credit, or sweep accounts at all. The definition of "paid" affords the insured some flexibility in structuring its finances so that it doesn't have to maintain or finance a large balance in its insurance custodial account.

The court concludes that Crystal Finishing's operating account was a "funding account" within the meaning of the policy. But that leads to a second interpretive problem: whether the operating account should be deemed to include the funds available from the line of credit, which was more than $12 million at the time. Crystal Finishing says the answer should be "yes," because UMR had access to the line of credit whenever it called for transfers from the operating account. But this argument is not supported by the policy definition of "paid."

The policy definition provides that "the funding account must *contain* sufficient funds to permit the check or draft to be honored." Dkt. 1-1, at 11 (emphasis added). It does not say that the funding account must *have access to* sufficient funds. The policy allows the insured to

fund the account on which the checks are drawn with a line of credit or separate account. But, by its terms, it does not allow multiple levels of accounts and lines of credit. This limitation provides a measure of simplicity and certainty in evaluating claims against the stop-loss policy. Under Crystal Finishing's view of the policy, its claims would have to be deemed "paid" even if the operating account was down to nothing, UMR did nothing to draw from the line of credit, and the claims payment checks bounced.

The court concludes that the operating account was a "funding account" under the policy, but that funds contained in that account do not include those available from the line of credit. The total amount of the outstanding checks that had been mailed but not drawn on March 31 was over $600,000, comprising 12 checks that ranged in value from $90.95 to $373,163.24. Dkt. 34, ¶ 12; Dkt. 34-2. So on March 31, the combined funds of the custodial account and the operating account—just under $403,000—did not contain sufficient funds to honor all of the checks that had been mailed. But the combined funds in the custodial account and operating account were sufficient to honor any of the individual checks. And there were funds in the two accounts to cover much of the outstanding total. Under the terms of the policy, at least some of the claims should have been deemed "paid" within the policy period.

The court will deny both parties' motions for summary judgment on Crystal Finishing's claim for breach of contract. Still, the facts material to this claim are undisputed, so there does not appear to be a need for a trial. The court will strike the trial date and other upcoming deadlines and direct the parties to confer on how to resolve this case given the court's interpretation of the policy. The parties may have until April 18, 2025, to file a joint statement addressing their proposed procedure for resolving this case, setting out alternative proposals on any points of disagreement.

### B. Bad faith claim

Wisconsin law allows plaintiffs to recover tort damages for the bad faith denial of an insurance claim. *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 692, 271 N.W.2d 368, 377 (1978). But the plaintiff has the burden of showing the "absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 26, 334 Wis. 2d 23, 36, 798 N.W.2d 467, 474 (citation omitted). If a claim "is fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Id.* (citation and internation quotation marks omitted).

Here, Gerber Life denied the claims because it interpreted the policy to require that there be a funding mechanism in place for the payments to be honored by the end of policy period and that there were not sufficient funds in the custodial account to honor all checks on March 31. Dkt. 34-6; Dkt. 34-7; Dkt. 34-10. The court concludes that Gerber Life's interpretation is wrong, but it was fairly debatable. Because no reasonable factfinder could find that Gerber Life lacked a reasonable basis for denying the claims, the court will grant summary judgment to Gerber Life on Crystal Finishing's bad faith claim.

### C. Indemnification counterclaim

Gerber Life contends that Crystal Finishing is liable for indemnifying Gerber Life under a hold-harmless provision of the policy. In relevant part, the provision states that Crystal Finishing "agrees to indemnify and hold [Gerber Life] harmless for . . . liability related to any negligence, error, omission or intentional misconduct of [Crystal Finishing] or its Third Party Administrator." Dkt. 1-1, at 21. Gerber Life contends that Crystal Finishing breached its

9

agreement to hold Gerber Life harmless by suing Gerber Life for what was really UMR's failure to arrange funding within the policy term.

The court will deny Gerber Life's motion for summary judgment on its counterclaim and dismiss the counterclaim. Gerber Life faces no liability other than for Crystal Finishing's claim for breach of contract. Thus, there is no claim for which Crystal Finishing would be called to indemnify.

ORDER

IT IS ORDERED that:

1. Defendant Gerber Life Insurance Company's motion for summary judgment, Dkt. 39, is DENIED.

2. Plaintiff Crystal Finishing Inc.'s, motion for summary judgment, Dkt. 30, is DENIED.

3. Defendant Gerber Life Insurance Company's counterclaim for indemnification is DISMISSED.

4. The parties' joint motion to modify the scheduling order, Dkt. 60, is DENIED as moot.

5. The trial date and all pretrial deadlines are STRUCK.

6. The parties may have until April 18, 2025, to file a joint statement proposing a procedure for resolving this case in light of the court's interpretation of the policy.

Entered March 21, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge